**CONSUMER LITIGATION LAW CENTER, APC**
September J. Katje, Esq., State Bar No. 227896
Email: sk@consumerlitigationlawcenter.com
Jeffrey J. Ogorek, Esq., State Bar No. 285927
Email: jjo@consumerlitigationlawcenter.com
100 North Citrus Ave., Suite 408
West Covina, California 91791
Phone: (800) 787-5616 || Fax: (888) 909-7947
Attorneys for Plaintiff, MARY ANN CLESCERI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARY ANN CLESCERI, an individual, | Case No.: 2:14-CV-02730-PA-MAN |
| Plaintiff, | **Verified First Amended Complaint For:** |
| v. | 1. **Fraud in Loan Origination** |
| | 2. **Fraud in Loan Servicing** |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, a National Association; CAL-WESTERN RECONVEYANCE CORP., a California Corporation; and all persons or entities unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in this complaint adverse to Plaintiff's title thereto; and DOES 1 through 25, inclusive, | 3. **Violation of Cal. *Bus. & Prof. Code* §§ 17200, et seq. in Loan Origination** |
| | 4. **Failure to Engage in Loss Mitigation (Cal. *Civ. Code* § 2923.5)** |
| | 5. **Violation of Homeowners Bill of Rights (Cal. *Civ. Code* § 2923.6)** |
| | 6. **Negligence in Loan Origination** |
| | 7. **Negligence in Loan Servicing** |
| | 8. **Unjust Enrichment** |
| | 9. **Reformation of a Fraudulent Contract and Restitution** |
| | 10. **Quiet Title** |
| Defendants. | 11. **Declaratory Relief** |
| | **And Demand For Jury Trial** |
| | **Unlimited Jurisdiction** |

/ / /

1
**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

NOW COMES the Plaintiff, MARY ANN CLESCERI ("Plaintiff"), complaining of the Defendants, and each of them, the following:

**I.**

**INTRODUCTION**

1.      This is an action filed for misconduct related to Plaintiff's negative amortization, adjustable rate mortgage ("ARM") loan that occurred in three distinct phases: (1) the loan origination, (2) the loan servicing, and (3) the instituting of wrongful foreclosure proceedings.

2.      As described in the allegations below, Defendants' misconduct resulted in the use of false and deceptive information, the issuance of an improper mortgage, premature and unauthorized foreclosure proceedings, and the violation of Plaintiff's rights and protections as a homeowner.  Each of the allegations regarding Defendants contained herein applies to instances in which one or more, and in some cases all, of the Defendants engaged in the conduct alleged.

**II.**

**THE PARTIES**

3.  Plaintiff MARY ANN CLESCERI ("Plaintiff"), is and at all times herein mentioned was, a resident of the State of California, County of Los Angeles.  Plaintiff, at all times relevant to this Complaint, was the owners of her primary residence commonly known as 15 Rising Hill Road, Pomona, California 91766[1] ("Subject Property").

/ / /

---

[1] Legal Description:  LOT 3 OF TRACT 34236, IN THE CITY OF POMONA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 925, PAGES 71 TO 75 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 8704-011-018

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

4.      Defendant WELLS FARGO BANK, NATIONAL ASSOCIATION ("Wells") is, and at all times mentioned herein was, a national association qualified to do business in the State of California.  Wells has significant contacts with Los Angeles County, California and the activities complained of herein occurred, in whole or in part, in Los Angeles County, California.  Wells is the current beneficiary of the Note and Deed of Trust that is the subject of this litigation ("Loan Agreement"), is the current servicer of the Loan Agreement, and is the successor in interest to World Savings Bank, FSB ("World Savings"), the original lender identified in the Loan Agreement, as well as the successor in interest to Wachovia Mortgage, FSB ("Wachovia").  A true and correct copy of the Note is attached hereto as Exhibit "A".  A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B".

5.      Defendant CAL-WESTERN RECONVEYANCE CORPORATION ("Cal-Western") is a California corporation doing business in the State of California, and is the current named trustee of record under the Substitution of Trustee recorded on October 21, 2008 ("Substitution of Trustee") and is the sole Defendant purportedly authorized to foreclose on the Subject Property under a power of sale contained in a deed of trust.  Cal. *Civ. Code* §§ 2920.5, 2924(a)(1), 2932–2933; Deed of Trust, Ex. "B", § III.(i)–(x), § 27.  A true and correct copy of the Substitution of Trustee is attached hereto as Exhibit "C".

6.      Plaintiff is informed, believes, and thereon alleges that at all times material hereto, all Defendants operated through a common plan and scheme designed to conceal the material facts set forth below from Plaintiff, from the California public and from regulators, either directly or as successors-in-interest or affiliates of other Defendants. The concealment was completed, ratified and/or confirmed by each Defendant herein, directly or as successor, agent, assignee or affiliate to another Defendant.  Each Defendant was a perpetrator of the tortious acts set forth herein for its own monetary gain and as a part of a common plan

**VERIFIED FIRST AMENDED COMPLAINT**

developed and carried out with the other Defendants, or was a successor-in-interest to a Defendant that did the foregoing.

7.     The Defendants that knowingly participated in the scheme are jointly and severally liable for their acts in devising, directing, knowingly benefitting from and ratifying the wrongful acts of the knowing participants.

8.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25 inclusive ("Does") and, therefore, sue these Defendants by such fictitious names.  Plaintiff will amend his Complaint to allege these Defendants true names and capacities when ascertained.   Plaintiff is informed,   believes,  and thereon    alleges that each of the fictitiously named Defendants are responsible in some manner for the injuries to Plaintiff alleged herein and that such injuries were proximately caused by such Defendants.

### III.

### THE HOME OWNERS' LOAN ACT DOES
### NOT APPLY TO PLAINTIFF'S CLAIMS

9.     The Home Owner's Loan Act ("HOLA"), regulated by the Office of Thrift Supervision ("OTS")  preempts state laws "affecting the operations" of federally chartered savings banks "except to the extent provided in paragraph (c) of this section or § 560.110 of this part."  12 C.F.R. § 560.2(a).

10.     Section 560.2(c) exempts from HOLA those state laws affecting "(1) Contract and commercial law; (2) Real property law; . . . (4) Tort law; . . . and (6) Any other law that OTS, upon review, finds: (i) furthers a vital state interest . . . ."

11.     Unfair competition, wrongful foreclosure, and fraud claims arising under state law are not preempted by HOLA.  *Osorio v. Wells Fargo Bank* (N.D. Cal. May 24, 2012, C 12-02645 RS) 2012 U.S. Dist. LEXIS 72719, at *2–*6.

12.     Violations of California *Civil Code* section 2923.5 are not preempted by HOLA.  *Pey v. Wachovia Mortg. Corp.* (N.D. Cal. Nov. 15, 2011, 11-2922 SC) 2011 U.S. Dist. LEXIS 1311699, at *25–*26.

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

13.    Claims arising under California *Business & Professions Code* section 17200, contract-based claims, and a wide variety of fraud claims arising under state law are not preempted by HOLA.  *Shaterian v. Wells Fargo* (N.D. Cal. 2011) 829 F. Supp.2d 873, 881–882; *Gibson v. World Savings & Loan Ass'n.* (2002) 103 Cal.App.4th 1291.

14.    Based on the foregoing authority, none of Plaintiff's causes of action alleged herein are preempted by HOLA.

**IV.**

**CALIFORNIA SUCCESSOR LIABILITY LAW**

15.    "'Successor in interest' is defined as: 'One who follows another in ownership or control of property.  In order to be a 'successor in interest,' a party must continue to retain the *same rights* as original owner… and there must be **change in form only and not in substance**. . . .'"  *Perez v. 222 Sutter St. Partners* (1990) 222 Cal.App.3d 938, 948, fn. 8 (quoting Black's Law Dict. (5th ed. 1979) p. 1283, col. 2 (emphasis added).)  Successor liability is "'extremely fact sensitive.'"  *Fisher v. Allis-Chalmers Corp. Product Liability Trust* (2002) 95 Cal.App.4th 1182, 1188 (quoting William P. O'Neill, Advanced Issues in Strategic Alliances (July 2000) 1193 PLI/Corp 351, 391).  It does not lend itself well to a determination without a trial, or an evidentiary hearing at the very least.  *Sunnyside Development Co., LLC v. Opsys Ltd.* (N.D.Cal. Aug. 29, 2007, No. C 05 0553 MHP) 2007 WL 2462142 at *6.

16.    Under California law, successor liability may be imposed on a corporation for the debts and liabilities of its predecessor in any of the following circumstances: (1) the transaction amounts to a consolidation or merger of the two corporations, (2) the purchasing corporation is merely a continuation of the selling corporation, or (3) the transaction is entered into fraudulently to escape liability for debts. *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28.

5

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

17.     It is well settled law that a corporation that purchases the assets of another assumes the first corporation's liabilities when the transfer of assets to the purchaser is for the fraudulent purpose of escaping the sellers' liabilities.  See, e.g., *Ray v. Alad Corp.*, *supra*, 19 Cal.3d 22.; *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 461.  Accordingly, the Uniform Fraudulent Transfer Act obviates any shield to liability from a transfer of assets when "the transfer made or obligation incurred" was made "(w)ithout receiving a reasonably equivalent value in exchange for the transfer or obligation."  Cal. *Civ. Code* § 3429.04(a)(2).

18.     Additionally, a defendant is liable for the fraud of a predecessor when information or documents from the transaction, available to the successor at the time of purchase, suggests that fraud has occurred.   See, e.g. *Maberry v. Said*, 911 F. Supp. 1393, 1399-1401 (D. Kan. 1995), later opinion, 927 F. Supp. 1456 (D. Kan. 1996) (lender held liable for fraud where it ratified the fraud and accepted the benefits therefrom).  Lack of knowledge suggestive of fraud is also not a defense to successor liability where the defendant had limited information as to any fraud, but "failed to inquire further because he was afraid of what the inquiry would yield . . . [because] [w]illful blindness is knowledge enough." *Louis Vuitton S.A. v. Lee* (7th Cir. 1989) 875 F.2d 584, 590; *United States v. Campbell* (4th Cir. 1992) 977 F.2d 854, 857.

19.     Plaintiff is informed, believes, and thereon alleges that Defendants transferred the note, deed of trust, and all riders, exhibits, and attachments thereto that are the subject of this action with the fraudulent intent of escaping the rampant liability tethered to the fraudulent inducement in origination of the Loan Agreement.

/ / /

/ / /

/ / /

6

**VERIFIED FIRST AMENDED COMPLAINT**

20.    Further, "(t)he surviving corporation under a statutory merger is responsible for the liabilities of the merged corporation under both common law and statute." *Petrini v. Mohasco Corp.* (1998) 61 Cal.App.4th 1091, 1098. This is true regardless of whether the liabilities were known at the time of the merger. *Id.*

21.    In short, the controlling point is that successor liability, like alter ego and similar principles, is an equitable doctrine.  As with other equitable doctrines, "it is appropriate to examine successor liability issues on their own unique facts . . . [and] [c]onsiderations of fairness and equity apply." *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th; *c.f.*, *Rego v. ARC Water Treatment Co.* (3d Cir. 1999) 181 F.3d 396 ("we emphasize that each successor liability case must be determined on its own facts.").

22.    Defendant Wells is the successor in interest to World Savings and Wachovia, and Cal-Western is the successor in interest to Golden West Savings Association Service Co., and, therefore, Wells and Cal-Western incur all such liability for their predecessors as to the allegations in this Complaint.

## V.

## JURISDICTION AND VENUE

23.    The Superior Court of the State of California, County of Los Angeles has personal jurisdiction over this matter pursuant to the California Constitution, Article XI, Section 10 and California *Code of Civil Procedure* section 410.10 because Defendants transacted business in said District and committed the acts complained of herein in California.

24.    Venue is proper in the Superior Court of the State of California, County of Los Angeles pursuant to California *Code of Civil Procedure* section 395.5 because Defendants entered into the underlying contract with Plaintiff in the above-referenced jurisdiction and the payment obligations are to be performed in the above-referenced District.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

# VI.

## FACTUAL ALLEGATIONS

25.    In or around March 2006, Plaintiff contacted a mortgage broker who was acting as an agent on behalf of Wells' predecessor in interest, World Savings, to solicit home mortgage loans from potential borrowers to refinance the Subject Property.

26.    Wells' broker assured Plaintiff that she would get the best interest rate available and filled out a loan application on Plaintiff's behalf without informing Plaintiff of the loan amount and without verifying Plaintiff's income beyond her pay stubs.  Moreover, Wells' broker never informed Plaintiff what her new monthly payment would be following the refinance but only stated that an interest only loan would be the best loan for Plaintiff.

27.    Based on the broker's assurances and representations, Plaintiff signed the Deed of Trust and Adjustable Rate Mortgage Note, dated March 22, 2006, and recorded on March 30, 2006 ("Loan Agreement").

28.    Wells' broker concealed from Plaintiff and failed to disclose, and Plaintiff was not aware at time of signing, that the initial interest rate under the Loan Agreement was actually a "teaser rate" that would change on the first payment date of May 15, 2006 based on an index tied to Golden West Financial Corporation Cost of Savings Index ("GDW COSI") plus an additional margin of 3.4%.  The GDW COSI was 3.560% as of May 15, 2006.  Thus, Plaintiff's true introductory interest rate was 6.96%, not 6.780%, the illusory rate listed on the Note.

29.    Wells' broker also concealed and failed to disclose, and Plaintiff was not aware at time of signing, that Plaintiff's initial fixed monthly loan payment of $1,214.45 was not even an interest only payment but rather less than interest only, causing the loan balance to increase due to negative amortization.

/ / /

30.     Wells' broker further concealed and failed to disclose that in making monthly payments under the Loan Agreement, Plaintiff was accruing negative amortization that would cause his principal balance to grow and to cause his payments to suddenly jump up when the principal balance of the Loan Agreement grew to 125% of the original loan amount, so that the loan would still be paid off over the remainder of the loan term.

31.     Unbeknownst to Plaintiff at the time of loan origination, and further undisclosed and concealed by Wells' broker, initially Plaintiff's monthly loan payment was thousands of dollars less than a fully amortized payment of principal and interest that would pay off the loan by the end of the thirty year term.

32.     Moreover, while servicing the Loan Agreement, Wells erroneously applied Plaintiff's monthly payments to principal rather than to interest although Wells previously told Plaintiff that it would apply payments towards interest first.

33.     Plaintiff fell behind on the Loan Agreement in or around 2008 due to the undisclosed negative amortization and struggled to catch up with her payments until—due to the rising interest rate and growing principal balance—Plaintiff applied for a loan modification in June 2011.  She was instructed by Wells that she should not attempt to pay under the Loan Agreement while applying for a loan modification.

34.     Plaintiff was required to submit the same documents over and over again by Wells in furtherance of the modification application because Wells repeatedly claimed that it lost documents or denied receiving documents that Plaintiff had submitted and that Wells had actually received and that Wells had previously confirmed receiving.

35.     Ultimately, rather than work with Plaintiff in good faith to avoid foreclosure, Wells never granted Plaintiff so much as even a trial plan or forbearance.  Rather, Wells finally denied Plaintiff for a loan modification in

**VERIFIED FIRST AMENDED COMPLAINT**

October 2013, without any explanation as to how Plaintiff failed to qualify for a modification.

36.    Wells, through its trustee Cal-Western, recorded a Notice of Default on the Subject Property on July 15, 2008 ("NOD").  A true and correct copy of the NOD is attached hereto as Exhibit "D".

37.    Wells, through its trustee Cal-Western then recorded a Notice of Trustee's Sale on the Subject Property on December 5, 2008 ("NTS").  A true and correct copy of the NTS is attached hereto as Exhibit "E".

38.    Wells, through its trustee Cal-Western then recorded a second Notice of Trustee's Sale on the Subject Property on April 11, 2012 ("NTS").  A true and correct copy of the NTS is attached hereto as Exhibit "F".   Plaintiff only discovered Wells' fraudulent acts and omissions at this time when she discovered the enormous past due amount that had accrued under the terms of the Loan Agreement that Wells concealed from Plaintiff, a past due amount that would not have accrued under the terms of the loan as Wells had falsely represented them to Plaintiff.

39.    Plaintiff is informed, believes, and thereon alleges that Wells intentionally delayed the loan modification review so that it could repeatedly claim that it did not have up to date documents and then ultimately deny Plaintiff for a loan modification due to insufficient documentation as a pretext to disqualify her.

40.    Plaintiff's gross monthly income has increased since she last applied for a modification and her monthly income is more consistent at present so that, Plaintiff is informed, believes, and thereon alleges that she now meets the criteria for a modification under Wells' guidelines.

/ / /

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

# FIRST  CAUSE OF ACTION

## FRAUD IN LOAN ORIGINATION

### (Against Defendants Wells and Does 1–25)

41.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

42.     Wells, as the successor in interest to the original lender World Savings and its agents, is responsible for failing to verify the affordability of Plaintiff's loan, is responsible for explaining the multiple payment options under the Loan Agreement as well as the possibility of negative amortization, is responsible for failing to explain the Loan Agreement's "teaser rate" and instead concealing the true introductory interest rate on the date of the first payment, and is responsible for failing to explain that monthly payments would adjust upwards sharply once the 125% principal balance cap is reached.

43.     Plaintiff is informed, believes, and thereon alleges that Wells knew these representations to be false at the time they made them because Wells, through its predecessor in interest, had extensive experience in loan servicing and origination and is privy to the actual terms of the Loan Agreement.

44.     Plaintiff is informed, believes, and thereon alleges that Wells intended to deceive Plaintiff so that Plaintiff would execute the Loan Agreement and thereby generate ongoing profits for Wells, even in the event of foreclosure, as Wells could profit off the collateral value of the Subject Property by foreclosing on Plaintiff and re-selling the Subject Property.

45.     Plaintiff relied on Wells' misrepresentations because Plaintiff executed the Loan Agreement and made required monthly payments thereunder. Moreover, Plaintiff had a right to rely on Wells' misrepresentations to the extent that Plaintiff was not involved in the real estate or financial services industry and therefore relied on and trusted Wells' knowledge, experience, expertise, advice, and representations in these matters.

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

46.     As a result of Plaintiff's reliance on Wells' misrepresentations, Plaintiff has suffered and continues to suffer pecuniary damages due from excessively high mortgage payments, fees, and costs in an amount to be proven at time of trial, but no less than the jurisdictional minimum of this Court.

47.     Plaintiff is further entitled to punitive damages to punish and deter Wells from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

48.     Plaintiff also faces near certain loss of the Subject Property due to Wells' wrongful foreclosure proceedings against the Subject Property caused by Wells' fraudulent acts and omissions.

49.     Plaintiff is therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SECOND CAUSE OF ACTION

## FRAUD IN LOAN SERVICING

### (Against Defendants Wells and Does 1–25)

50.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

51.     Wells first misapplied Plaintiff's monthly payments to pay down principal when Wells should have been paying down interest first, as promised by Wells, and thereby pushing Plaintiff towards default.

52.     After Plaintiff contacted Wells to apply for a loan modification to avoid losing the Subject Property, Wells instructed Plaintiff that she did not have to make payments under the Loan Agreement while she to applied for a loan modification, which was false because Plaintiff fell further into default by acting on Wells' instructions to stop making monthly mortgage payments.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

53.   Wells also repeatedly asked for the same information and documentation over and over, despite the fact that Plaintiff had confirmed Wells' received the requested documentation on numerous occasions.

54.   Ultimately, Wells denied Plaintiff's loan modification application even though Wells failed to account for rental income that Wells previously stated that it *would* account for when calculating Plaintiff's gross income, and that Plaintiff is informed, believes, and thereon alleges would have caused Plaintiff to qualify for a loan modification under Wells' guidelines.

55.   Plaintiff is informed, believes, and thereon alleges that Wells knew these acts and omissions to be false at the time they made them because Wells knew Plaintiff was having difficulty making payments and wanted to foreclose on the Subject Property and re-sell it for a profit rather than work with Plaintiff to keep the property in good faith.

56.   Plaintiff is informed, believes, and thereon alleges that Defendants intended to deceive Plaintiff so that Plaintiff would default, obtain either no modification or an unaffordable modification, and provide Defendants the opportunity to foreclose on the Subject Property and re-sell it for a profit.

57.   Plaintiff relied on Wells' misrepresentations because Plaintiff—on Defendants' instructions—stopped making her monthly payment under the Loan Agreement and fell into default on the understanding that Defendants would then work with Plaintiff to give an affordable loan modification.

58.   As a result of Plaintiff's reliance on Defendants' misrepresentations, Plaintiff has suffered and continues to suffer pecuniary damages from excessively high mortgage payments, fees, costs, and loss of equity in an amount to be proven at time of trial, but no less than the jurisdictional minimum of this Court.

59.   Plaintiff also faces near certain loss of the Subject Property due to Defendants' wrongful foreclosure proceedings against the Subject Property caused by Defendants' fraudulent acts and omissions.

CONSUMER LITIGATION LAW CENTER, APC

13

**VERIFIED FIRST AMENDED COMPLAINT**

60.     Plaintiff is therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

### THIRD CAUSE OF ACTION

**VIOLATION OF CAL. *BUS. & PROF. CODE* §§ 17200, ET SEQ.**

**(Against Defendants Wells, Cal-Western, and Does 1–25)**

61.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62.     California *Business & Professions Code* section 17200, California's Unfair Competition Law ("UCL"), prohibits "any **unlawful**, **unfair** or **fraudulent** business act or practice."  Cal. Bus. & Prof. Code § 17200 (emphasis added).  The code section is written in the disjunctive, and thus requires that only one prong is satisfied in order to find liability.  *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 180.

63.     **Unlawful:** "The 'unlawful' practices prohibited by section 17200 are **any** practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or **court-made**."  *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 838–39 (emphasis added).  These predicate unlawful business acts and practices include, but are not limited to, California *Civil Code* section 1709 (fraud in loan origination and servicing), *Civil Code* section 1710 (negligent misrepresentation), *Civil Code* section 2923.5 (wrongful foreclosure/unfair and deceptive practices in foreclosure process), *Civil Code* section 2923.6 (violation of Homeowner Bill of Rights), and *Civil Code* section 1714(a) (negligence).  A violation of any of these underlying laws is a *per se* violation of section 17200.

64.     Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 1709 as alleged hereinabove in that Defendants, through their acts and omissions, misrepresented the terms and affordability of the Loan Agreement, causing Plaintiff to agree to a loan she would

CONSUMER LITIGATION LAW CENTER, APC

not have otherwise, to Plaintiff's financial detriment.  Defendants further violated *Civil Code* section 1709 because they instructed Plaintiff to default on the Loan Agreement in order to receive a modification, but then dragged the modification process out for nearly two years, only to deny Plaintiff without any financial breakdown showing why Plaintiff did not qualify, or explanation as to their qualifications for a modification.

65.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 1709 as alleged hereinabove in that Defendants, through their acts and omissions, misrepresented the terms and affordability of the Loan Agreement, causing Plaintiff to agree to a loan she would not have otherwise agreed to, to Plaintiff's financial detriment.   Defendants further violated *Civil Code* section 1709 because they instructed Plaintiff to stop making monthly payments under the Loan Agreement while in loan modification review, but then dragged the modification process out for years only to deny Plaintiff without properly accounting for Plaintiff's monthly income and without any financial breakdown showing why Plaintiff did not qualify for a modification and, ultimately, so that Defendants could accrue continuous interest, fees and penalties, and ultimately foreclose on the Subject Property.  Plaintiff is informed, believes, and thereon alleges that at the time Defendants made the factually untrue statements and/or omissions described hereinabove, Defendants did not believe them to be true.

66.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 2923.5 by failing to initiate contact with Plaintiff to discuss loss mitigation options to avoid foreclosure at least thirty (30) days before filing the NOD and by failing to comply with the notice requirements of *Civil Code s*ection 2923.5 before recording the NOD on the Subject Property.

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

67.     Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, violated *Civil Code* section 1714(a) in that Defendants owed a duty of care to Plaintiff as the lenders, servicers, and trustees of the Loan Agreement, that Defendants' conduct fell below the standard of care that Defendants owed to Plaintiff, that Defendants' conduct was the actual and proximate cause of the harm to Plaintiff alleged herein and that Plaintiff suffered damages as alleged herein as a result of Defendants' negligent acts and omissions.

68.     Finally, Defendants' acts and omissions in both originating and servicing the Loan Agreement violate California *Civil Code* section 1572 because Plaintiff was induced to enter into the Loan Agreement through the suppression of facts known by Defendants, *Civil Code* section 1708 because the Loan Agreement injured Plaintiff by destroying her credit rating, *Civil Code* section 1709 because Defendants wrongfully and willfully deceived Plaintiff into changing position to her financial detriment, and *Civil Code* section 1711 because Defendants violated established California public policies to protect the public from deceitful conduct.

69.     **Unfair:** "[A]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to the consumer." *People v. Casa Blanca Convalescent Homes Inc.* (1984) 159 Cal.App.3d 509, 530. Furthermore, the "unfair" standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud. *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740. Finally, because section 17200 is disjunctive, practices that may be lawful may nevertheless be unfair. *Id*.

70.     Defendants, and each of them, engaged in unfair business practices by deceiving Plaintiff as to the terms of the Loan Agreement, failing to explain the terms of the Loan Agreement to Plaintiff, refusing to assist Plaintiff to avoid foreclosure, failing to review Plaintiff for a modification in good faith, failing to provide Plaintiff with correct updates as to her modification status, repeatedly

**VERIFIED FIRST AMENDED COMPLAINT**

losing documents and requesting the same documents over and over from Plaintiff, instructing Plaintiff to default on her loan, and by proceeding with the foreclosure process on the Subject Property without authority to do so.

71.     As alleged hereinabove, when Defendant originators, successors and assigns had an opportunity to mitigate the adverse consequences of the predatory Loan Agreement, they either did nothing to relieve Plaintiff or engaged in bad faith "modification assistance" by instructing Plaintiff to stop making her monthly payment while in modification review and by denying Plaintiff for a loan modification for which she should have qualified.

72.     Defendants' purported loan assistance perpetuated a pattern of deceptive and unfair business practices by failing and refusing to provide Plaintiff with a loan modification pursuant to the Federal Home Affordable Mortgage Program ("HAMP") or any other internal loan modification program for which Plaintiff qualified.  Defendants' unfair practices include:

a.     charging excessive or improper fees for default-related services;

b.     providing false or misleading information in response to inquiries;

c.     failing to perform proper loan modification underwriting;

d.     failing to gather or losing loan modification application documentation and other paper work;

e.     failing to provide adequate staffing to implement programs;

f.     failing to adequately train staff responsible for loan modifications;

g.     failing to establish adequate processes for loan modifications;

h.     providing false or misleading information to Plaintiff;

i.     initiating foreclosure while Plaintiff was in good faith actively pursuing a loss mitigation alternative offered by Defendants;

**VERIFIED FIRST AMENDED COMPLAINT**

> j.   miscalculating Plaintiff's eligibility for loan modification programs;
>
> k.   misleading Plaintiff by representing that loan modification applications would be handled promptly yet failing to act in a timely manner; and
>
> l.   wrongfully denying Plaintiff's modification application.

73.   Instead of mitigating the drastic consequences of the predatory Loan Agreement as required, Defendants continued foreclosure proceedings on the Subject Property.

74.   Plaintiff is informed, believes, and thereon alleges that Defendants failed to seek alternatives to foreclosure and continued with the foreclosure process as part of their company policies to deny contractual and stipulated benefits to borrowers such as Plaintiff and instead foreclose and profit on the collateral value of the Subject Property.  These policies were put into place despite the fact that Defendants are under a duty to offer modification and foreclosure prevention relief in good faith under California law.

75.   The unfair practices of Defendants in the servicing of Plaintiff's loan violate public policy favoring loan modification.  This policy is evidenced by Cal. *Civil Code* section 2923.6, and HAMP.

76.   **Fraudulent**:  A business practice is fraudulent under *Business and Professions Code* section 17200 if "members of the public are likely to be deceived." *Committee on Children's Television v. General Foods Corp*. (2002) 35 Cal.3d 197, 211.  Furthermore, even lawful contract terms presented in a deceptive manner are fraudulent under section 17200.  *Boschma v. Home Loan Ctr., Inc.* (2011) 198 Cal.App.4th 230, 253.  Such fraudulent practices do not require the plaintiff show actual deception, reliance, or damages. *Committee on Children's Television v. General Foods Corp.*, *supra*, 35 Cal.3d at 211.

**VERIFIED FIRST AMENDED COMPLAINT**

Defendants' acts and omissions, as alleged herein, were likely to deceive members of the public and, in fact, did deceive Plaintiff.

77.    Defendants' fraudulent business practices included, but were not limited to:

    a.    marketing the Loan Agreement on the basis of exaggeration, misrepresentation, and/or the concealment of material facts;

    b.    failing to disclose the whole truth about the Loan Agreement's underwriting and associated costs;

    c.    misapplying Plaintiff's monthly mortgage payments;

    d.    instructing Plaintiff to stop making her monthly payment while in loan modification review;

    e.    failing to review Plaintiff for a loan modification in good faith so that Defendants could instead charge excessive interest, penalties and fees, and ultimately foreclose on the Subject Property;

    f.    falsely stating that Plaintiff did not need to make mortgage payments when she applied for a loan modification;

    g.    informing Plaintiff that they had received documents during Plaintiff's loan modification review only to later deny receiving the very same documents; and

    h.    informing Plaintiff that Wells Fargo would include rental income as part of Plaintiff's gross monthly income calculation used to determine whether Plaintiff qualified for a loan modification only to later refuse to include Plaintiff's rental income in order to cause Plaintiff not to qualify for a loan modification.

///
///

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

78.   Defendants' unlawful, unfair, and fraudulent business practices present a continuing threat of deception to both Plaintiff and members of the public at large as alleged herein.  Plaintiff and other members of the general public have no other adequate remedy at law that will prevent Defendants' misconduct as alleged herein from occurring, and reoccurring, in the future to both Plaintiff and members of the general public.

79.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices alleged herein, Plaintiff has suffered extensive pecuniary damages as alleged herein as well as threatened loss of the Subject Property.

80.   As a result of Plaintiff's reliance on Defendants' misrepresentations, Plaintiff has suffered and continues to suffer pecuniary damages due to excessively high mortgage payments, fees, and costs in an amount to be proven at time of trial but no less than the jurisdictional minimum of this Court.

81.   Plaintiff also faces near certain loss of the Subject Property due to Defendants' wrongful foreclosure proceedings against the Subject Property caused by Defendants' unlawful, unfair, and fraudulent acts and omissions alleged herein.

82.   Plaintiff is therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## FOURTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN LOSS MITIGATION

### (Cal. *Civ. Code* § 2923.5)

### (Against Defendants Wells, Cal-Western, and Does 1–25)

83.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

///

///

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

84.    California *Civil Code* section 2923.5(a)(2) requires that the **mortgage servicer, trustee, or beneficiary contact the borrower in person or by phone** to discuss options to avoid foreclosure and schedule a subsequent meeting within fourteen (14) days if the borrower so requests, as well as the telephone number to locate a HUD-certified counseling agency.  Cal. *Civ. Code* § 2923.5(a)(2).

85.    Plaintiff is informed, believes, and thereon alleges that prior to recording the NOD on the Subject Property, Defendants never initiated contact with Plaintiff in person or by phone to discuss any options to avoid foreclosure, never scheduled a subsequent meeting with Plaintiff, never provided Plaintiff with HUD's telephone number, and never provided the telephone number to locate a HUD-certified counseling agency.

86.    Once Plaintiff contacted Defendants to discuss loss mitigation, Defendants purported "single point of contact" failed to timely contact Plaintiff, Defendants constantly gave Plaintiff false or inconsistent status updates regarding her loan modification application, and Defendants habitually lost documents over and over despite the fact that Plaintiff promptly provided all documents requested. Rather, Plaintiff contacted many of Defendants' representatives who repeatedly asked for the same information from Plaintiff over and over again, only to deny Plaintiff a loan modification on the grounds of missing documents that Plaintiff had in fact provided to Defendants.

87.    California *Civil Code* section 2923.5(e) requires that before recording a NOD on a property in foreclosure, the mortgage servicer, trustee, or beneficiary must conduct "due diligence" to contact the borrower.  Cal. *Civ. Code* § 2923.5(e).  "Due diligence" requires that the mortgage servicer, trustee, or beneficiary send a first-class letter including the toll-free telephone number to locate a HUD-certified counseling agency, that the servicer follow up by phone on three occasions at three different hours on different days, and that the servicer

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

send a certified letter, return receipt requested if the borrower does not respond to the phone calls in two weeks.  Cal. *Civ. Code* § 2923.5(e)(2)–(3).

88.   The servicer, trustee, or beneficiary of the mortgage shall not record a NOD until thirty (30) days after it has satisfied the requirements of California *Civil Code* section 2923.5.  Cal. *Civ. Code.* § 2923.5(a).

89.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, failed to satisfy the contact and notice requirements of California *Civil Code* section 2923.5 in that Defendants failed to contact Plaintiff to discuss options to avoid foreclosure, failed to set up a follow up appointment with Plaintiff, failed to provide Plaintiff with HUD's telephone number to find a certified counseling agency, failed to mail a letter to Plaintiff with said phone number, failed to call Plaintiff at three times on three different days, and failed to send a certified letter to Plaintiff with return receipt requested.

90.   On or about July 15, 2008, Defendants initiated a non-judicial foreclosure proceeding on Plaintiff's residence when Wells Fargo, through its alleged trustee, Cal-Western, recorded a NOD on the Subject Property.

91.   Thus, Defendants did not fulfill the substantive obligations imposed upon them, as Lenders, by the legislature prior to the recording of the NOD.  In fact **Defendants told Plaintiff that she did not need to make her mortgage payments while in modification review**.   These instructions are in direct contradiction to California *Civil Code* section 2923.5.

92.   The NOD should not have been recorded, and the recordation violated California *Civil Code* section 2923.5.   No NOD should have been recorded prior to a good faith effort being made by Defendants to contact Plaintiff and explore alternatives to foreclosure.

93.   This violation makes the foreclosure and any subsequent trustee's sale of the Subject Property wrongful, improper, and illegal under California law.
/ / /

94.     Defendants' actions were against public policy because the legislature enacted this provision of the *Civil Code* to slow the process so that foreclosures could be avoided.

95.     As a result of these wrongful acts and omissions, Plaintiff has been precluded from benefiting from the rights granted by *Civil Code* sections 2924(b) and 2923.5, in being contacted by her  lender, servicer, or trustee  with  due diligence  in  an  attempt  to  modify  the Loan Agreement to a principal amount and an interest rate which she could not only afford, but would allow her to stay in her home.

96.     Plaintiff is therefore entitled to injunctive relief prohibiting Defendants from exercising the power of sale in violation of *Civil Code* section 2923.5 and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE HOMEOWNERS BILL OF RIGHTS

### (Cal. *Civ. Code* § 2923.6)

### (Against Defendants Wells, Cal-Western, and Does 1–25)

97.     Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98.     Under the portion of the Homeowner Bill of Rights ("HBOR") codified at *Civil Code* section 2923.6, the lender, servicer, trustee, beneficiary, or authorized agent shall not record a NOD, NTS or conduct a trustee's sale until the appeal period expires after the borrower is provided in writing with a denial of their loan modification application.  Cal. *Civ. Code* 2923.6(c).  The borrower must have at least thirty (30) days from the date of the written denial to appeal the decision.  Cal. *Civ. Code* 2923.6(d).  Furthermore, once the borrower appeals the denial, the lender, the trustee's sale still cannot take place until either fifteen days

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

after denial of the appeal or fourteen days after the borrower denies a modification given on appeal.  Cal. *Civ. Code* 2923.6(e).

99.   Here, Plaintiff never received a written denial of her loan modification application and is informed and believes her loan modification application is still pending.

100. Plaintiff is therefore entitled to injunctive relief prohibiting Defendants from exercising the power of sale in violation of *Civil Code* section 2923.6 before the statutorily required time period for a modification decision and appeal expires, and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE IN LOAN ORIGINATION

### (Against Defendants Wells, Cal-Western, and Does 1–25)

101.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102.   California law recognizes a cause of action for negligence arising from negligent breach of a contractual duty.

103.   Plaintiff is informed, believes, and thereon alleges that Defendants had a contractual duty to exercise reasonable care and skill as the successors in interest to the originators of the Loan Agreement.

104.   Defendants breached the duty of care that they owed to Plaintiff in originating the Loan Agreement when, through their broker, Defendants failed to verify Plaintiff's income.  Defendants also failed to inform Plaintiff that her initial interest rate was actually only a "teaser rate" that would adjust upwards on the first payment date.  Defendants' further failed to inform Plaintiff that the initial fixed payment was actually less than a fully amortized interest-only payment, and therefore caused the principal balance of the Loan Agreement to increase due to negative amortization.  As a related matter, Defendants failed to disclose to

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

Plaintiff that the payment under the Loan Agreement would rapidly increase due to negative amortization when the principal balance grew to 125% of the original principal balance and the monthly payments adjusted to cause the loan to become fully amortized over the remainder of the loan term.  Defendants assured Plaintiff that the Loan Agreement was the best and most affordable for Plaintiff with no reasonable grounds to believe that was true, especially considering the lack of income verification.

105.   As a direct and proximate result of Defendants' failure to exercise due care in originating the Loan Agreement, Plaintiff is now stuck with an unaffordable loan, has suffered tens of thousands of dollars in negative amortization, incurred numerous fees and costs, and is facing loss of the Subject Property, including the equity she has built in the Subject Property.

106.   Based on Defendants' negligent acts and omissions as alleged hereinabove, Plaintiff is entitled to general and special damages in an amount to be proven at time of trial but in any event no less than the jurisdictional minimum of this Court.

107.   Plaintiff is further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

108.   Plaintiff is therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE IN LOAN SERVICING
### (Against Defendants Wells, Cal-Western, and Does 1-25)

109.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

110.   California law recognizes a cause of action for negligence arising from negligent breach of a contractual duty.

111.   Plaintiff is informed, believes, and thereon alleges that Defendants had a contractual duty to exercise reasonable care and skill as the servicers of the Loan Agreement or the successors thereto and that, furthermore, Defendants' actions exceeded the scope of a mere lender of money in reviewing Plaintiff for a loan modification.

112.   Defendants breached their duties to Plaintiff in that Defendants instructed Plaintiff to stop making monthly payments on the Loan Agreement during the modification process.

113.   Defendants then delayed in modification review, repeatedly lost the documents that Plaintiff submitted at Defendants' request over and over again, gave Plaintiff false and contradictory updates as to the status of her modification. Defendants, in fact, informed Plaintiff that they had received documents during Plaintiff's loan modification review only to later deny receiving the very same documents.

114.   Defendants informed Plaintiff that Wells Fargo would include rental income as part of Plaintiff's gross monthly income calculation used to determine whether Plaintiff qualified for a loan modification only to later refuse to include Plaintiff's rental income in order to cause Plaintiff not to qualify for a loan modification.

115.   Defendants finally denied Plaintiff for a modification after years without accounting for an increase in Plaintiff's income and without any explanation as to how Plaintiff failed to meet the guidelines of any applicable modification programs.

116.   Defendants also recorded a NOD and NTS without authority to do so as Defendants failed to engage in the loss mitigation protocol outlined in HAMP, HBOR, and as alleged hereinabove.

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

117.   Defendants' acts and omissions were both the actual and proximate cause of Plaintiff's injuries because Plaintiff would not have defaulted on the Loan Agreement without Defendants' express instructions to do so.   Plaintiff would not have a NOD or NTS recorded on the Subject Property had Defendants realized that they had no authority to foreclose on Plaintiff without following proper loss mitigation procedure under HBOR and had Defendants not instructed Plaintiff to stop making monthly mortgage payments while in modification review.   Plaintiff would have taken additional loss mitigation steps sooner had Defendants not delayed for years in reviewing Plaintiff for a modification while repeatedly assuring Plaintiff that she was in active review.   Finally, Plaintiff is informed, believes, and thereon alleges that she would already have qualified for a modification had Defendants properly accounted for Plaintiff's income and expenses and not lost Plaintiff's documents.

118.   As a result of Defendants' negligent acts and omissions, Plaintiff has suffered and continues to suffer unaffordable loan payments, loss of equity, tens of thousands of dollars in negative amortization, numerous fees and costs, and is facing loss of the Subject Property, including the equity she has built in the Subject Property.

119.   Based on Defendants' negligent acts and omissions as alleged hereinabove, Plaintiff is entitled to general and special damages in an amount to be proven at time of trial but in any event no less than the jurisdictional minimum of this Court.

120.   Plaintiff is further entitled to punitive damages to punish and deter Defendants from such outrageous, reckless conduct and to deter other lenders, servicers, and originators who are likely to commit similarly reckless acts and omissions in the future.

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

121.   Plaintiff is therefore entitled to such relief as is set forth in this Cause of Action and to such further relief set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## EIGHTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(Against Defendants Wells, Cal-Western, and Does 1-25)**

122.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

123.   Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, have obtained insurance on the Subject Loan that will compensate Defendants due to default and/or a trustee's sale even though the value of Plaintiff's home is greater than the loan amount so Defendants will reap double profits both on the full value of their insurance policy on the Loan Agreement and by foreclosing on the Subject Property and re-selling it for a profit rather than granting Plaintiff a loan modification for which she is qualified.

124.   Plaintiff is further informed, believes, and thereon alleges that the Subject Property's value is currently greater than the amount Plaintiff owes under the Loan Agreement by approximately $91,000.00.

125.   Defendants will, therefore, be unjustly enriched if Defendants foreclose on the Subject Property as they will be compensated both through the foreclosure and again through insurance on the Loan Agreement.

126.   Plaintiff is therefore entitled to any proceeds from the insurance and sale of the Subject Property beyond the amount due and owing as of the trustee's sale date in order to prevent Defendants' unjust enrichment in an amount to be proven at time of trial but in any event no less than the jurisdictional minimum of this Court.

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

# NINTH CAUSE OF ACTION

## REFORMATION OF A FRAUDULENT CONTRACT AND RESTITUTION

### (Cal. *Civ. Code* §§ 1670.5, 1667, 1689, 3412)

### (Against Defendants Wells, Cal-Western, and Does 1–25)

127.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.   A contract may be rescinded "(1) If the consent of the party rescinding . . . was . . . obtained through . . . fraud, or [or] . . . (5) [i]f the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault [or] . . . (6) [i]f the public interest will be prejudiced by permitting the contract to stand." Cal. *Civ. Code* § 1689(b).

129.   In like manner "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. *Civ. Code* § 3412.

130.   California *Civil Code* section 1670.5 provides in relevant part, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time that it was made the court may refuse to enforce the contract . . . ." Cal. *Civ. Code* § 1670.5.

131.   As discussed hereinabove, the Loan Agreement marketed, originated, and serviced by Defendants, was unconscionable and Defendants induced Plaintiff to execute the loan agreement based on fraudulent acts and omissions because: (1) the Loan Agreement included undisclosed negative amortization and in introductory "teaser rate" that was not the true starting interest rate; (2) the loan contained terms for the adjustable increase in the amount of interest to be paid, and by extension, the amount of the monthly mortgage payments that were to be paid over the term of the loan, without regard to the ability of Plaintiff to be able

**VERIFIED FIRST AMENDED COMPLAINT**

to pay the increased payments upon adjustment, thus setting Plaintiff up for likely or certain default and inevitable foreclosure in contravention of government policies favoring home ownership and disfavoring foreclosure; and (3) the monthly payment was certain to increase because the Loan Agreement contained a cap on the maximum amount the principal balance could grow, thus once negative amortization caused the loan to meet the maximum allowable principal balance, the monthly payment would suddenly increase to allow for fully amortized payments that were completely unknown and undisclosed to Plaintiff, yet certain to occur due to the initial negative amortization.  Such unconscionable acts by Defendants were and are in violation of California *Civil Code* sections 1596, 1708 and 1709, as the Loan Agreement was injurious not only to Plaintiff, but also to the public at large, and was deceptive for the reasons stated above.

132.   It was reasonably foreseeable to the Defendants, and each of them, that such egregious contract terms would cause Plaintiffs to default—besides the fact that Defendants encouraged Plaintiff to default—thereby resulting in economic injury to Plaintiff.  Said injury includes loss of home improvements, excessive fees and mortgage payments, relocation costs, credit damage, loss of equity, and emotional distress associated with the impending foreclosure.  The combination of negative amortization and a cap on the maximum principal balance leading to a readjustment of monthly payments did in fact lead Plaintiff to default, in violation of California public policy.  See Cal. *Civ. Code* § 1711.

133.  Plaintiff also contends that the Loan Agreement originated was procured by fraud and therefore illegal, void, and unenforceable.  The Loan Agreement is also void as it violates numerous California statutes pursuant to *Civil Code* section 1667.  Plaintiff alleges that Defendants and each of them violated the following statutes: *Civil Code* sections 1572, 1573, 1596, 1670.5, 1709, 1710 and *Business & Professions Code* sections 17200, et seq.

/ / /

CONSUMER LITIGATION LAW CENTER, APC

CONSUMER LITIGATION LAW CENTER, APC

134.   Based on the above referenced violations of California law, and pursuant to the equitable remedy of reformation authorized by the California *Commercial Code* in cases of fraud in the inducement of a contract, Plaintiff seeks reformation of the Loan Agreement to properly reflect the meeting of the minds as to the true terms of the agreement that Plaintiff rightfully believed to be the basis of the Loan Agreement.  Based on such reformation, Plaintiff seeks restitution of all monies paid pursuant to the Loan Agreement, including earnest money, all closing costs, all principal, interest, and taxes paid prior to default that exceed of the terms of the properly reformed agreement, to be proven at time of trial.

135.   Plaintiff is entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

### TENTH CAUSE OF ACTION

### QUIET TITLE

### (Cal. *Code Civ. Proc.* § 760.020)

**(Against Defendants and All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title Or Any Cloud On Plaintiff's Title Thereto, and Does 1–25)**

136.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

137.   Plaintiff is the legal owners of the Subject Property that is commonly known as 15 Rising Hill Road, Pomona, California 91766.[2]

---

[2]  Legal Description:  LOT 3 OF TRACT 34236, IN THE CITY OF POMONA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 925, PAGES 71 TO 75 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**VERIFIED FIRST AMENDED COMPLAINT**

138.   Plaintiff seeks to quiet title as of July 15, 2008, the date the NOD was recorded.

139.   Plaintiff seeks to quiet title against the claims of all Defendants named in this Complaint and anyone else claiming interest in the Subject Property.   Defendants and any successors or assignees have no right to title or interest in the Subject Property and no right to entertain any rights of ownership including rights of possession.

140.   Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone as the title owner of the Subject Property, and that Defendants, and each of them, be declared to have no estate, right, title, or interest in the Subject Property, and that Defendants, their agents, and assigns, be forever enjoined from asserting any estate, right, title or interest in the Subject Property.

141.   As Defendants do not have any legal ownership or interest in the Subject Property on the date of foreclosure, allegedly obtained the Subject Property through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate a foreclosure sale of the Subject Property, the foreclosure sale proceedings are void and invalid.   Therefore, Plaintiff still has title to the Subject Property.

142.   Tender of the full outstanding debt is not required to quiet title in favor of Plaintiff.   There is no bright-line rule requiring tender of the unpaid debt to set aside a sale.   *Storm* v. *America's Servicing Company* (S.D.Cal. Nov. 6, 2009, No. 09CV1206-IEG (JMA)) 2009 WL 3756629 at *6 fn. 9.   Tender is a "matter of discretion left up to the Court."   *Id.* at *6.   Even if tender were expressly required anywhere, there is no requirement that tender be pled because

APN: 8704-011-018

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

"at the procedural stage the Court only decides whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Id*. (quoting *Bell Atlantic Corp.* v. *Twombly* (2007) 550 U.S. 544, 547).   Furthermore, requiring Plaintiffs to allege tender would affirm the underlying debt and invalidate Plaintiffs claims.  See *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424. Plaintiff's claims for fraud and unfair and deceptive acts challenge the underlying debt.  In addition, the general equitable exception to the tender rule should be applied as such a requirement would evidence injustice and a hardship.  *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291.

143.   Accordingly, the Court should rule that title to the Subject Property be vested in Plaintiff's name alone and award consequential damages in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (Cal. *Code Civ. Proc.* § 1060; 28 U.S.C. § 2201)
### (Against Defendants Wells, Cal-Western, and Does 1–25)

144.   Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

145.   An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding the Loan Agreement, the foreclosure process, and the validity of a trustee's sale on the Subject Property.

146.   These disputes concern, but are not limited to, the ownership rights to the Subject Property and the validity of the foreclosure process and trustee's sale.

147.   Plaintiffs contend that pursuant to the Loan Agreement, Defendants do not have authority to foreclose upon and sell the Subject Property.

/ / /

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

148.   Plaintiff is informed, believes, and thereon alleges that Defendants dispute Plaintiff's position as alleged herein and take the contrary position that they do in fact have the legal right and authority to foreclose on the Subject Property.

149.   As a result of said dispute, Plaintiff requests a judicial determination of the rights, obligations, and interest of the parties as to the Subject Property as authorized under California *Code of Civil Procedure* section 1060 and 28 United States Code section 2201.   Such a determination is necessary and appropriate at this time, and under these circumstances, so that all parties may ascertain and know their rights, obligations, and interest in the Subject Property.

150.   As a result of Defendants' wrongful foreclosure proceedings, Plaintiff will sustain great and irreparable injury through the permanent loss of the Subject Property.   Plaintiffs cannot obtain adequate relief from money damages because real property is unique; thus, Plaintiffs lack an adequate remedy at law.

151.   Plaintiff requests a determination of the validity of the Loan Agreement.

152.   Plaintiff request a determination of the validity of the NOD recorded on July 15, 2008 as well as the NTS recorded on December 5, 2008.

153.   Plaintiff requests a determination of whether any Defendant has authority to foreclose and to conduct a trustee's sale on the Subject Property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.  To enjoin any trustee's sale of the Subject Property scheduled while the instant litigation is pending;

2.  For compensatory damages awarded according to proof;

3.  For special damages according to proof;

/ / /

**VERIFIED FIRST AMENDED COMPLAINT**

CONSUMER LITIGATION LAW CENTER, APC

4. For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

5. For reformation of the Loan Agreement and restitution of all principal and interest paid by Plaintiff as well as any and all costs and fees Plaintiff paid pursuant to the Loan Agreement;

6. For all applicable statutory damages;

7. For attorney's fees and costs of suit incurred herein;

8. For pre- and post-judgment interest thereon; and

9. For such other and further relief as the court deems just and proper.

Dated: May 22, 2014          CONSUMER LITIGATION LAW CENTER, APC


By:   ___/s/ Jeffrey J. Ogorek_____
          September J. Katje, Esq.
          Jeffrey J. Ogorek, Esq.
          Attorneys for Plaintiff,
          MARY ANN CLESCERI

CONSUMER LITIGATION LAW CENTER, APC

35

**VERIFIED FIRST AMENDED COMPLAINT**

**<u>VERIFICATION</u>**

I, Mary Ann Clesceri, am the Plaintiff in this action.  I have read the Verified First Amended Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information and belief, and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at West Covina, California on May 20, 2014.


_____

Mary Ann Clesceri

CONSUMER LITIGATION LAW CENTER, APC

**VERIFIED FIRST AMENDED COMPLAINT**

## VERIFICATION

I, Mary Ann Clesceri, am the Plaintiff in this action.  I have read the Verified First Amended Complaint and the facts and allegations contained therein are true to the best of my knowledge, except as to those matters stated on information and belief, and, as to those matters, I believe them also to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at West Covina, California on May 20, 2014.


_Mary Ann Clesceri_
Mary Ann Clesceri

CONSUMER LITIGATION LAW CENTER, APC

36

**VERIFIED FIRST AMENDED COMPLAINT**

# EXHIBIT A

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER  0041788142                              DATE  March 22, 2006

BORROWER(S)  MARY ANN CLESCERI, AN UNMARRIED WOMAN    sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS  15 RISING HILL ROAD, POMONA, CA  91766-4960

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S  $330,800.00 , called "Principal," plus interest, to the order of the Lender  The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred

## 2.  INTEREST

### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I will pay interest at the yearly rate of 6.760%  The interest rate I will pay  may change as described in this Section 2  Interest will be charged on the basis of a twelve month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note

### (B)  Interest Change Dates

The interest rate I will pay may change on the 15th day of May, 2006 and on the same day every month thereafter  Each date on which my interest rate could change is called an "Interest Change Date" The new rate of interest will become effective on each Interest Change Date

### (C)  Interest Rate Limit

My lifetime maximum interest rate limit is 11.950%, called "Lifetime Rate Cap "



LENDER'S USE ONLY

SD263A (2004-03-1)                    ADJUSTABLE NOTE                CA
                                         Page 1

0041788142

**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.400** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F), the Index is not "available" if (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note, or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **May 15, 2006.** I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument. If, on **April 15, 2036,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,214.45**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **May, 2007** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

0041788142

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due  If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment  Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply  Additionally, the Payment Cap limitation will not apply on the final Payment Change Date

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date  The Payment Change Notice will include information required by law

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time  I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal

**5.   BORROWER'S RIGHT TO PREPAY**

**I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.**

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me  The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender  The amount of the charge will be **5.00%** of my overdue payment of Principal and interest  I will pay this late charge promptly but only once on each late payment

0041788142

### (B)   Default

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

### (C)   Notice of Default

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument

### (D)   No Waiver by Lender

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

### (E)   Payment of Lender's Costs and Expenses

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  These expenses may include, for example, reasonable attorneys' fees and court costs

### 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **16 RISING HILL ROAD, POMONA, CA  91766-4960,** or at a single alternative address if I give the Lender notice of my alternative address  I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement  I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

### 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who takes over these obligations is also obligated to keep all of the promises made in this Note  The Lender may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

### 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor  "Presentment" means the right to require the Lender to demand payment of amounts due  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

### 11.   SECURED NOTE - ACCELERATION

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

#### AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission  However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration  If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

0041788142

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if.

    (i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

    (ii)   Lender approves the creditworthiness of the transferee in writing,

    (iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

    (iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

    (v)   the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

### 12.  GOVERNING LAW; SEVERABILITY
This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

### 13.  CLERICAL ERRORS
In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

### 14.  LOST, STOLEN OR MUTILATED DOCUMENTS
If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

 

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0041788142

## SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____  (Seal)
MARY ANN CLESCERI

# EXHIBIT B

**This page is part of your document - DO NOT DISCARD**

**06 0675379**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**03/30/06 AT 08:00am**

**TITLE(S) :** _____

L E A D   S H E E T

**FEE**

FEE $_6_2_ MM
DAF $ _4_
C-20                  17
                      2t

D.T.T.

NOTIFICATION SENT $4

**CODE**
**20**

**CODE**
**19**

**CODE**
**9____**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

____ - ____

**THIS FORM IS NOT TO BE DUPLICATED**

3/30/06

**CALIFORNIA COUNTIES TITLE CO.**

**RECORDING REQUESTED BY:**
WORLD SAVINGS BANK

**WHEN RECORDED MAIL TO:**
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

**LOAN NUMBER:0041788142**

**NOTE AMOUNT: $330,800.00**

**ASSESSOR'S IDENTIFICATION #:**
8704-11-018

06 0675379

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $413,500.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.   **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
    **(A)  Security Instrument.** This Deed of Trust, which is dated **March 22, 2006,** will be called the "Security Instrument."

    **(B)  Borrower.** MARY ANN CLESCERI, AN UNMARRIED WOMAN sometimes will be called "Borrower" and sometimes simply "I" or "me."

    **(C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-2)                    DEED OF TRUST-ADJUSTABLE              CA
DEFERRED INTEREST                         Page 1

0 0 3

LENDER'S USE ONLY

3/30/06

0041788142

**(D)  Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$330,800.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **April 15, 2036** ("Maturity Date").

**(E)  Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F)  Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G)  Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H)  Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.     BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)     The Property which is located at **15 RISING HILL ROAD, POMONA, CA  91766-4960**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                         **CA**
DEFERRED INTEREST                        Page 2                    06  0675379

. . 3/30/06



0041788142

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

### IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

### 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

### 2.    PAYMENTS FOR TAXES AND INSURANCE

(A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                                  CA
                                                    Page 3

06  0675379

3/30/06

0041788142

**(B)**    **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-2)                      DEED OF TRUST-ADJUSTABLE                              **CA**
                                                    Page 4

06 0675379

. . 3/30/06

0041788142

**3.   APPLICATION OF BORROWER'S PAYMENTS**
Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-2)                                    DEED OF TRUST-ADJUSTABLE                                    CA
                                                                 Page 5                          06  0675379

. 3/30/06

0041788142

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately if any offer to settle a claim I receive from the insurance company, will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations.  I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                              CA
                                                      Page 6

06 0675379

3/30/06



0041788142

### 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-2)

DEED OF TRUST-ADJUSTABLE
Page 7

CA

06 0675379

3/30/06

0041788142

**10.     CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   **(A)     Borrower's Obligations**

   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   **(B)     Lender's Rights**

   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.     OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.     MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                      **CA**
                                                            Page 8                        06  0675379

3/30/06

0041788142

### 13.    LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **15 RISING HILL ROAD, POMONA, CA  91766-4960**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15.    GOVERNING LAW; SEVERABILITY

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16.    BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD001I (2004-03-2)                                DEED OF TRUST-ADJUSTABLE
                                                                Page 9                                                                        CA

06  0675379

3/30/06

0041788142

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**
         An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.     CLERICAL ERRORS**
         In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.     LOST, STOLEN OR MUTILATED DOCUMENTS**
         If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.     WAIVER OF STATUTE OF LIMITATIONS**
         I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.     CAPTIONS**
         The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.     MODIFICATION**
         This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
         If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

         **(A)**     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                    CA
                                                    Page 10

06  0675379



3/30/06

0041788142

**(B)**     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.    FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-2)                           DEED OF TRUST-ADJUSTABLE
                                                        Page 11                                              **CA**

06  0675379

3/30/06



0041788142

26.    **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

27.    **SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-2)                    DEED OF TRUST-ADJUSTABLE                        CA
                                            Page 12

06  0675379

.3/30/06

0041788142

**28.     RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.     RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.     STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-03-2)                    DEED OF TRUST-ADJUSTABLE
                                              Page 13

CA
06 0675379

3/30/06



0041788142

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-2)                      DEED OF TRUST-ADJUSTABLE                        **CA**
                                              Page 14
                                                                            06  0675379

· 3/30/06

0041788142

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____    (Seal)
MARY ANN CLESCERI

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)        [AF1 (2004-03-1)]            **Page 15**                **CA**
                         [AL1 (2004-03-1)]

06  0675379

. 3/30/06



**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"

## LEGAL DESCRIPTION

**LOAN NO.  0041788142**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **LOS ANGELES** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

LOT 3 OF TRACT 34236, IN THE CITY OF POMONA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 925, PAGES 71 TO 75 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEEDS OF RECORD.

SD001 (2003-03-1)                Page 16 of 16                CA

06  0675379

3/30/06

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

STATE OF CALIFORNIA                    }
COUNTY OF _Los Angeles_           } SS

On _March 23, 2006_ _____ before me, _Angela R. Hernandez_ Notary Public
personally appeared _Mary Ann Ciesceri_ _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies); and that by his/her/their signature(s) on the instrument the person(s); or the entity upon behalf of
which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

Signature _____

```
ANGELA R. HERNANDEZ
Commission # 1495888
Notary Public - California
Los Angeles County
My Comm. Expires Jun 20, 2008
```

(This area for official notarial seal)

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying
on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**DESCRIPTION OF ATTACHED DOCUMENT**

Title or Type of Document: _Deed of Trust_

Document Date: _3/22/06_ _____ Number of Pages: _16_

Signer(s) other than named above _____ _NONE_

**CAPACITY(IES) CLAIMED BY SIGNER(S)**

| | |
|---|---|
| [  ]   INDIVIDUAL | [  ]   INDIVIDUAL |
| [  ]   CORPORATE OFFICER(S)         Right Thumbprint<br>TITLE(S)_____   of Singer<br>Top of thumb here | [  ]   CORPORATE OFFICER(S)         Right Thumbprint<br>TITLE(S)_____   of Singer<br>Top of thumb here |
| [  ]   PARTNER(S) -  [  ] LIMITED<br>[  ] GENERAL | [  ]   PARTNER(S) -  [  ] LIMITED<br>[  ] GENERAL |
| [  ]   ATTORNEY-IN-FACT | [  ]   ATTORNEY-IN-FACT |
| [  ]   TRUSTEE(S) | [  ]   TRUSTEE(S) |
| [  ]   GUARDIAN OR CONSERVATOR | [  ]   GUARDIAN OR CONSERVATOR |
| [  ]   OTHER_____ | [  ]   OTHER_____ |

**SIGNER IS REPRESENTING:**

_____          _____
_____          _____

06  0675379

**EXHIBIT C**

**This page is part of your document - DO NOT DISCARD**

**20081870064**  Pages: 003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/21/08 AT 08:00AM**

Fee:  13.00
Tax:  0.00
Other: 0.00

Total: 13.00

**Title Company**

# TITLE(S) :

L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

E836042

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

*1157198-02*    *SUBXR*

```
10/21/08
20081870064
```

_____ SPACE ABOVE THIS LINE FOR RECORDER S USE _____

## SUBSTITUTION OF TRUSTEE

LOAN NO:XXXXXX8142                          T.S. NO.:1157198-02

WHEREAS, MARY ANN CLESCERI AN UNMARRIED WOMAN
    was the original Trustor,
GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO A CALIFORNIA CORP was the original Trustee,
and WORLD SAVINGS BANK FSB        was the original Beneficiary under that certain Deed of Trust dated March
22, 2006 and recorded on March 30, 2006 as Instrument No. 06 0675379, in book XX, page XX of Official Records of
LOS ANGELES County, California, and

WHEREAS, the undersigned is present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to
substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder, in the manner in
said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes, CAL-WESTERN RECONVEYANCE CORPORATION a
California Corporation whose address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON CA 92022-9004 as
Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine
and/or neuter, and the singular number includes the plural

Dated: 10/7/08                           WACHOVIA MORTGAGE, FSB. F.K.A. WORLD
                                         SAVINGS BANK


                                         _____
                                         Eric Tate      Attorney in Fact


State of MN        )
County of Dakota   )
On ___10/7/08___ before me,    Shoua Moua
a Notary Public in and for said State, personally appeared      Eric Tate
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal

                                                              (Seal)
Signature _____

```
SHOUA MOUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2012
```

SUBCA.DOC                        Rev. 01/23/08                              Page 1 of 1

## CAL-WESTERN RECONVEYANCE CORPORATION

T.S NO. 1157198-02

LOAN NO. 8142

## AFFIDAVIT OF MAILING SUBSTITUTION OF TRUSTEE
### PURSUANT TO CALIFORNIA CIVIL CODE §2934a

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

THE UNDERSIGNED BEING SWORN, SAY(S):

A COPY OF THE SUBSTITUTION OF TRUSTEE HAS BEEN MAILED, PRIOR TO OR CONCURRENTLY WITH THE RECORDING THEREOF, IN THE MANNER PROVIDED IN SECTION 2934a OF THE CIVIL CODE OF CALIFORNIA, TO ALL PERSONS TO WHOM A COPY OF THE NOTICE OF DEFAULT WOULD BE REQUIRED TO BE MAILED BY THE PROVISIONS OF SUCH SECTION.

Dated: OCT 1 7 2008

_Rebecca Clark_
Rebecca Clark

State of California

County of San Diego

Subscribed and sworn to (or affirmed) before me on OCT 1 7 2008 _____, by Rebecca Clark, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

SUSAN L. MEYERS
COMM. #1589947
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. JUNE 25, 2009

_Susan L. Meyers_
**Susan L. Meyers**

ASUB.DOC                                                                            Rev. 01/01/08

Cal-Western Reconveyance Corporation
525 East Main Street, El Cajon, California 92020 •P.O. Box 22004, El Cajon, California 92022-9004
TEL: (619) 590-9200 •FAX: (619) 590-9299 • Website: www.cwrc.com

**EXHIBIT   D**

          **This page is part of your document - DO NOT DISCARD**          



**20081254656**          Pages:
003

Recorded/Filed in Official Records          Fee:  13.00
Recorder's Office, Los Angeles County,          Tax:  0.00
California          Other: 0.00

**07/15/08 AT 08:00AM**          Total: 13.00

**Title Company**

# TITLE(S) :

_____



**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.          **Number of AIN's Shown**

\-          \-

     _F.SM176_          **THIS FORM IS NOT TO BE DUPLICATED**          

LOS ANGELES,CA          Page 1 of 3          Printed on 12/5/2013 9:07:09 AM
Document: ND 2008.1254656

2

**Recording Requested By**
**When Recorded Mail To**

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

07/15/08

**20081254656**

Trustee Sale No. 1157198-02

Space Above This Line For Recorder's Use

Loan No. XXXXXX8142  Ref: CLESCERI, MARY

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $5,602.77 as of July 14, 2008, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WACHOVIA MORTGAGE, FSB. F.K.A. WORLD SAVINGS BANK

C/O Cal-Western Reconveyance Corporation
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Page 1 of 2

3

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary**

**under a deed of trust dated March 22, 2006 executed by**

**MARY ANN CLESCERI AN UNMARRIED WOMAN**
  as trustor, to secure certain obligations in favor of

**WORLD SAVINGS BANK FSB**
  as beneficiary

recorded as document 06 0675379 on March 30, 2006 in book XX page XX official records in the office of County Recorder of LOS ANGELES
County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

said obligations including a promissory note for the principal sum of $330,800.00
that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due April 15, 2008 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

T.S. 1157198-02

Dated:        July 14, 2008              **CAL-WESTERN RECONVEYANCE CORPORATION**

08 1254656

Signature By _____

01/03/2007 rev.                                                                                 Nodca.doc Page 2 of 2

**EXHIBIT   E**



**This page is part of your document - DO NOT DISCARD**



## 20082147669



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/05/08 AT 08:00AM**

| | |
|---|---|
| FEES: | 16.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 16.00 |

## TITLE(S) : NOTICE





**L E A D S H E E T**



**200812050120008**

001126099

**SEQ:**
**10**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

\*1157198-02\*  \*nosxr\*   E836042

Trustee Sale No. 1157198-02

12/05/08

20082147669

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

LOAN NO: XXXXXX8142                          APN: 8704-011-018 TRA:
REF: CLESCERI, MARY                          UNVER

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **March 22, 2006**.  UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER

On **December 22, 2008**, at **10:00am**, **CAL-WESTERN RECONVEYANCE CORPORATION**, as
duly appointed trustee under and pursuant to Deed of Trust recorded **March 30, 2006**, as Inst. No. **06
0675379**, in book **XX**, page **XX**, of Official Records in the office of the County Recorder of **LOS
ANGELES** County, State of **CALIFORNIA** executed by:

### MARY ANN CLESCERI AN UNMARRIED WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK

**AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE,
SOUTHEAST DISTRICT, 12720 NORWALK BLVD.,
NORWALK CALIFORNIA**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

NOS.DOC                          Rev. 09/02/2008                          Page 1 of 3

3

## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1157198-02

The street address and other common designation, if any, of the real property described above is purported to be:

**15 RISING HILL ROAD
POMONA CA 91766**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$389,736.70**.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**See Attached Exhibit "A"**

FOR SALES INFORMATION: Mon – Fri 9:00am to 4:00pm **(619)590-1221**
**CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004**

Dated: **November 19, 2008**          By: _Jeffrey A Jesser/CV_

Authorized Signature

NOS.DOC                    Rev. 09/02/2008                    Page 2 of 3

NOTICE OF TRUSTEE'S SALE EXHIBIT "A"

Trustee Sale No. 1157198-02     Loan No. XXXXXX8142

The mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to
California Civil Code § 2923.5(c) declares, while contact was not made with the borrower, that
the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent made the
following efforts to contact the borrower:
**Attempted times to contact the borrower at the borrower's primary
telephone number in the lender's or loan servicer's file.
Mailed letter(s) to borrower advising the borrower: (1) of the lender's (or lender's authorized
agent's) desire to speak to borrower to assess the borrower's financial situation and to
explore options for the borrower to avoid foreclosure; (2) of the lender's (or lender's
authorized agent's) toll-free number to contact the lender or the lender's authorized agent;
and, (3) of the toll-free telephone number made available by HUD to find a HUD-certified
housing counseling agency.**

NOS.DOC                              Rev. 09/02/2008                          Page 3 of 3

# EXHIBIT F

**This page is part of your document - DO NOT DISCARD**



# 20120542334



**Pages:
0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/11/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



**201204110150015**

**00005640936**



**003917640**

**SEQ:
06**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**　　t35

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE
CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004



04/11/2012

*20120542334*

APN: **8704-011-018**
Trustee Sale No. **1157198-02**                    Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE      E836042

TRA:007741

REF: **CLESCERI, MARY**                          **UNVER**
Property Address: 15 RISING HILL ROAD, POMONA  CA  91766

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **March 22, 2006**.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER

On **May 02, 2012**, at **9:00am**, **CAL-WESTERN RECONVEYANCE CORPORATION**, as duly appointed
trustee under and pursuant to Deed of Trust recorded **March 30, 2006**, as Inst. No. **06 0675379**, in book **XX**, page
**XX**, of Official Records in the office of the County Recorder of **LOS ANGELES** County, State of **CALIFORNIA**
executed by:

### MARY ANN CLESCERI AN UNMARRIED WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A
STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A
CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS
ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND
AUTHORIZED TO DO BUSINESS IN THIS STATE:

**BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC
CENTER PLAZA
POMONA CALIFORNIA**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said
County and State described as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

NOS.DOC                                                                    Page 1 of 3

## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1157198-02

The street address and other common designation, if any, of the real property described above is purported to be:

**15 RISING HILL ROAD**
**POMONA CA 91766**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:
**$499,139.73.**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**See Attached Exhibit "A"**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (619)590-1221 or visit the Internet Web Site WWW.RPPSALES.COM using the file number assigned to this case 1157198-02. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web Site. The best way to verify postponement information is to attend the scheduled sale.

FOR SALES INFORMATION: (619)590-1221
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON CA 92022-9004**

Dated: April 05, 2012

CAL-WESTERN RECONVEYANCE CORPORATION

By: _____
          Authorized Signature
                                    **C. Hoy**

NOS.DOC                                                                        Page 2 of 3

(Page 1 of 1)



Wachovia Mortgage
PO Box 659958
San Antonio, TX 78265-9558

Loan Number: 0041788142
Mary Ann Clesceri

**WACHOVIA**

### Declaration of Wachovia Mortgage, FSB

Regarding Mary Ann Clesceri (hereinafter referred to as "borrower"), as required by California Civil Code Section 2923.5(c), I, Leslie Solis an officer of Wachovia Mortgage, FSB, declare as follows:

_____ The borrower was contacted regarding loan number 0041788142 to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure; or

___✓___ As indicated below, Wachovia Mortgage, FSB, made the following efforts to contact the borrower, but contact was not made.
   ___✓___ Use of autodialer to contact borrower
   ___✓___ Manually dialed call(s) to the borrower
   ___✓___ Mailed correspondence to the borrower containing a toll free number for Wachovia Mortgage, FSB, and regarding the delinquency.
   ___✓___ Mailed brochure(s) to the borrower regarding options to avoid foreclosure
   _____ Email communication to the borrower

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

9-16-08
Date

_____
By:
Title Assistant Vice President

FP010 004 LSS

LL1740 Rev.01 (10/07)